UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL JERIMIAH SIMMS,

　　　　　Plaintiff,

　　v.

CHARLES R. SCHWAB, *et al.*,

　　　　　Defendants.

CASE NO. 3:19-cv-05642 BHS

ORDER TO SUBMIT NEW PROPOSED COMPLAINT, DISMISSING PROPOSED AMENDED COMPLAINT WITHOUT PREJUDICE, AND RENOTING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

　　　　Plaintiff, who proceeds *pro se* and is currently incarcerated, requests to proceed *in forma pauperis* ("IFP") in this civil matter alleging federal question jurisdiction. Pursuant to Amended General Order 02-19, the District Court has referred plaintiff's application to the undersigned. The matter is before the Court on plaintiff's first amended proposed complaint.

　　　　Plaintiff brings civil Racketeering Influenced and Corrupt Organizations Act ("RICO") claims against various Charles Schwab entities and employees as well as plaintiff's wife. Plaintiff's theory of liability is that these defendants formed a scheme together to deprive plaintiff of his separate property. However, plaintiff provides no factual allegations plausibly

establishing that defendants acted with a single, common purpose—as necessary to make out a cognizable RICO claim. Plaintiff's other federal claim—brought under 42 U.S.C. § 1985—fails because plaintiff does not plead any facts to support the claim that defendants acted on the basis of plaintiff's membership in a protected class. And the Court will not exercise supplemental jurisdiction over plaintiff's state law claims absent a cognizable claim brought under federal law. Therefore, before the Court will rule on plaintiff's IFP motion, plaintiff must amend his proposed amended complaint (Dkt. 6-1) to correct the deficiencies identified in this Order.

**BACKGROUND**

Plaintiff, who is incarcerated at the Clallum Bay Corrections Center, initiated this matter by filing an IFP motion in July 2019. *See* Dkt. 1. The undersigned reviewed plaintiff's IFP application—including his proposed complaint—and, determining that the proposed complaint failed to state a claim upon which relief could be granted, dismissed the proposed complaint without prejudice, and directed plaintiff to submit a new proposed complaint in support of his IFP application, if he wished to proceed. *See* Dkt. 4.

Plaintiff filed an "*ex parte* motion to amend complaint." Dkt. 6. His new proposed complaint (Dkt. 6-1) brings claims against 11 named defendants—first, two executives (the "executive defendants"): Charles Schwab, allegedly the founder and Chairman of Charles Schwab enterprises, and Walter Bettinger II, allegedly the CEO of Charles Schwab enterprises. Dkt. 6-1, at 2. Second, plaintiff lists five Charles Schwab entities (the "company defendants"): Charles Schwab Corporation, Charles Schwab Holdings, Charles Schwab & Co. Inc., Charles Schwab Bank, and Charles Schwab Investment Management, Inc. Dkt. 6-1, at 2–3. Third, plaintiff lists an employee ("defendant Daniel") of "Charles Schwab enterprises," who is

identified only by his first name and as an employee of a Lynwood, Washington branch. Dkt. 6-1, at 3. Fourth, plaintiff lists "Michael Campion," allegedly the "Senior Manager of the Compliance Department of Charles Schwab enterprises[.]" Dkt. 6-1, at 3. Fifth, plaintiff lists a "Client Advocacy Team" ("defendant team"), "an unknown amount of individuals" apparently working for one of the company defendants. Dkt. 6-1, at 3. Sixth, plaintiff lists his wife, defendant Simms. Dkt. 6-1, at 3. Plaintiff also lists 100 unnamed, Doe defendants who worked for "Charles Schwab enterprises" at some point. *See* Dkt. 6-1, at 3.

In summary, the allegations of plaintiff's first amended proposed complaint are as follows: in August 2014, plaintiff and defendant Simms entered into a prenuptial agreement that plaintiff intended "to protect funds earned before marriage." Dkt. 6-1, at 5. In early 2017, defendants Simms proposed opening a "convenience account"—"a Joint Account that enabled [defendant Simms] to withdraw the separate funds only at [p]laintiff's direction or for [p]laintiff's benefit." Dkt. 6-1, at 6. Defendant Simms promised that she would not use plaintiff's funds from this account without his consent or direction. *See* Dkt. 6-1, at 6–7.

However, defendant Simms, defendant Daniel, and 10 unnamed defendant employees then opened joint brokerage and bank accounts in plaintiff's name. *See* Dkt. 6-1, at 7. Plaintiff says he had not consented to opening this type of account and that he did not know that this type of account had been opened. *See* Dkt. 6-1, at 7–8. Plaintiff later deposited approximately $33,000 into the accounts. Dkt. 6-1, at 9.

After April 2018, the company defendants and defendant Simms then "secretly" changed the mailing address for the accounts, so that plaintiff stopped receiving "Monthly Transaction Statements, causing [p]laintiff to lose track of his separate funds." Dkt. 6-1, at 12. In June or July 2018, plaintiff wrote the company defendants to demand his account statements and notify

them of potential fraud. *See* Dkt. 6-1, at 13. He also demanded that defendant Simms change the address back and send him the missing account statements. *See* Dkt. 6-1, at 13. Allegedly, defendant Simms took over $5,000 of plaintiff's separate funds from the accounts. *See* Dkt. 6-1, at 14. Moreover, on November 30, 2018, a Doe defendant contacted defendant Simms to notify her of plaintiff's demand for account statements and threatened to close the accounts in 2019—an action that allegedly allowed defendant Simms to drain the accounts, resulting in plaintiff losing "over fifty-thousand dollars" of separate funds. Dkt. 6-1, at 15–16. Plaintiff alleges that by failing to provide him with the account statements, the company defendants impeded plaintiff's attempt to institute state court proceedings against defendant Simms as well as federal agency investigations. *See* Dkt. 6-1, at 15–16.

On November 30, 2018, and January 27, 2019, plaintiff alleges that he again wrote to request documents about his accounts and notify "Charles Schwab" that there was unauthorized activity occurring. *See* Dkt. 6-1, at 17, 20. However, Doe defendants failed to take action in response to his requests. *See* Dkt. 6-1, at 21. Plaintiff also wrote defendant Simms in November 2018 and January 2019, demanding account statements and that she change the statement address back. *See* Dkt. 6-1, at 18, 21. Defendant Simms failed to do so. *See* Dkt. 6-1, at 21.

In January 2019, plaintiff also wrote to the Financial Industry Regulatory Authority, requesting that they investigate the matter. *See* Dkt. 6-1, at 25. The company and executive defendants assigned defendant Campion, his compliance department, and ten Doe defendant employees to plaintiff's complaints. *See* Dkt. 6-1, at 25. Plaintiff contends that defendants continued to refuse to disclose account statements, contracts, and proof of a change of address notification. *See* Dkt. 6-1, at 26. In April 2019, plaintiff informed various agencies of defendant Campion's actions. *See* Dkt. 6-1, at 29. Plaintiff states that defendants then—

falsely—informed the agencies that plaintiff had concealed his "incarceration/identity." *See* Dkt. 6-1, at 28, 31.

In sum, plaintiff contends that he lost $53,245.96 (*see* Dkt. 6-1, at 43), and he brings a variety of federal and state law claims against defendants. He requests $10 million in damages, as well as an additional $30 million in treble damages for his civil RICO claim. *See* Dkt. 6-1, at 49.

## DISCUSSION

The matter is before the Court on plaintiff's "*ex parte* motion to amend complaint" (Dkt. 6), which this Court interprets as plaintiff's first amended proposed complaint, in response to the Court's order directing plaintiff to amend his proposed complaint. *See* Dkt. 4. Although received shortly after the deadline that the Court gave plaintiff to amend his proposed complaint, the Court will accept the proposed amended complaint as timely filed.

**I. Legal Principles**

When a plaintiff wishes to proceed IFP, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action[.]'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Although this Court will interpret a *pro se* complaint liberally, it "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). This Court will also grant leave to amend unless it appears that there is no set of factual allegations that could cure the pleading. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**II. Civil RICO**

Plaintiff brings claims against all defendants under civil RICO, 18 U.S.C. § 1962(c). *See* Dkt. 6-1, at 33.

**A. RICO Elements**

The statute upon which plaintiff relies makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity . . . (5) causing injury to plaintiff's business or property." *See United Bros. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Here, plaintiff alleges the commission of at least two crimes listed under 18 U.S.C. § 1961 as predicate acts. *See, e.g.*, Dkt. 6-1, at 11–13.

1    Because plaintiff's civil RICO claim relies on a pattern of activity including various
2    alleged instances of fraud, plaintiff must plead the factual circumstances of the alleged fraud
3    underlying his civil RICO claim with particularity.  *See Odom v. Microsoft Corp.*, 486 F.3d 541,
4    553–54 (9th Cir. 2007).

### B.  "Conduct of an Enterprise"

6     An "enterprise" under RICO includes a group of individuals who are associated in fact,
7    even if they are not a legal entity.  *See* 18 U.S.C. § 1961(4).  The enterprise "is an entity separate
8    and apart from the pattern of activity in which it engages."  *United States v. Turkette*, 452 U.S.
9    576, 583 (1981).

10        An association-in-fact enterprise is "a group of persons associated together for a common
11   purpose of engaging in a course of conduct."   *Turkette*, 452 U.S. at 583; *see also Boyle v. United
12   States*, 556 U.S. 938, 946 (2009) (holding that an association-in-fact enterprise must have
13   structural features including "a purpose.").  There are three elements of an associated-in-fact
14   enterprise:  "(1) a common purpose, (2) an ongoing organization, and (3) a continuing unit."
15   *Untied States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015).

16        Here, regarding common purpose, plaintiff states that all defendants "associat[ed]
17   together for the common purpose of furthering the scheme of unlawfully depriving Plaintiff of
18   his separate property/funds[.]"  Dkt. 6-1, at 34.  Plaintiff's complaint is replete with this legal
19   conclusion.  But in reviewing whether a complaint states a claim, the Court takes as true factual
20   allegations, not legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Factual allegations that do not
21   plausibly give rise to an entitlement to relief do not state a claim.  *See id.* at 679.

22        Setting aside plaintiff's bare legal conclusions, the factual allegations regarding the
23   Charles Schwab defendants' purposes in their various actions do not plausibly suggest that these

ORDER TO SUBMIT NEW PROPOSED COMPLAINT, DISMISSING PROPOSED AMENDED
COMPLAINT WITHOUT PREJUDICE, AND RENOTING PLAINTIFF'S APPLICATION TO PROCEED
IN FORMA PAUPERIS - 7

defendants' common purpose was for defendant Simms to steal plaintiff's separate property. Instead, plaintiff's allegations about intent support, at most, that the Charles Schwab defendants' intent was to open unauthorized accounts in order to increase profits—and then to cover up their actions. For example, regarding the Charles Schwab defendants' intent in opening the joint accounts, plaintiff alleges,

> [The company defendants] received new clients that generated fees and further interest, [defendant Daniel] obtained intracorporate benefits and/or commissions for opening new deposits accounts, and [defendant Simms] was granted unrestricted access to Plaintiff's funds. [The executive defendants] received inflated account origination numbers, increased funds on deposit . . . that enable[d] them to loan more funds on margin and quote the new accounts in corporate filings and quarterly earning[s] reports that appreciat[e] their stocks. Accordingly they are all responsible for creating a corrupt culture that values profits above all else.

Dkt. 6-1, at 8; *see also* Dkt. 6-1, at 9 (alleging that defendants overlooked the deficiencies in opening the accounts and applicable safeguards because they wanted to "reap the benefits" associated with opening new accounts).

Tellingly, plaintiff's statement of the alleged enterprise's common purpose under his RICO claim is that all defendants "did continuously function as a unit as they all furthered the purposes, whether for the structure of Charles Schwab et al[.] or their own pecuniary gain." Dkt. 6-1, at 34. But the common purpose to establish an association-in-fact must be, in fact, "common." It is insufficient to allege that some defendants had one purpose—to inflate their profits and account-generating statistics by opening unauthorized accounts, then to cover up their misdeeds—and that another defendant had a different purpose—to take money that was not hers.

Plaintiff also repeatedly alleges that some of the 100 unidentified employee defendants enabled defendant Simms' actions by failing to intervene or even by warning defendant Simms when plaintiff requested account statements. Plaintiff claims that when he wrote to the "Charles

1 | Schwab address" in June or July 2018 to demand account statements, an unknown employee
2 | called defendant Simms to warn her that plaintiff demanded the account statements, thereby
3 | "willfully execut[ing] a scheme . . . that enabled [defendant Simms] to obtain Plaintiff's separate
4 | funds[.]" Dkt. 6-1, at 14–15. Again, these allegations are inadequate—plaintiff must plead
5 | factual allegations to plausibly support that each defendant intended to further a common scheme
6 | for defendant Simms to take plaintiff's separate property. He must also plausibly allege that the
7 | unknown defendant employee's actions were the proximate cause of his injuries (that is, that
8 | there is some direct relation between the injury asserted and the injurious conduct alleged). *See*
9 | *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008). But here, plaintiff
10 | alleges that in November 2018 and January 2019, plaintiff himself wrote defendant Simms to
11 | demand account statements and a change of address—an allegation that appears to contradict
12 | plaintiff's claim that the unknown employee's actions caused defendant Simms to drain the
13 | accounts. *See* Dkt. 6-1, at 18.
14 |      Plaintiff's complaint lacks any plausible allegations of a common purpose. For instance,
15 | throughout the complaint, plaintiff ascribes conflicting "intents" to the unknown employee who
16 | called defendant Simms—claiming at one point that the defendant intended to "deprive Plaintiff
17 | of his right [to] honest services" (Dkt. 6-1, at 14), at another point that the employee's intent was
18 | to "reap the benefits" of opening accounts (Dkt. 6-1, at 9), and at yet another point that the
19 | employee's intent was to allow defendant Simms to act unhindered so that plaintiff would be
20 | defrauded. *See* Dkt. 6-1, at 14.
21 |      Plaintiff's allegations are essentially that the Charles Schwab defendants did not care
22 | about the consequences of their actions. *See, e.g.*, Dkt. 6-1 ("Defendants knew, or should [have]
23 | known, that the refusal [to send the change of address notification] could deprive [p]laintiff of
24 |

1 | his right to honest services and that said scheme could operate as a fraud upon [p]laintiff."). But
2 | disregarding the consequences of their actions is not the same as having a common purpose of
3 | joining in defendant Simms' fraudulent purpose, as a civil RICO claim would require. *Accord*
4 | *Baker v. Cohen*, No. CV 09-3170-GHK (FMOx), 2010 WL 11515458, at *4 (C.D. Cal. Feb. 18,
5 | 2010) ("[T]he purported existence of an enterprise must rest on more than the mere assertion that
6 | one entity's alleged misconduct or negligence was beneficial to another entity.").

Without a plausible claim that more than one defendant acted with a common purpose of unlawfully taking plaintiff's separate property, plaintiff has not alleged an associated-in-fact enterprise, as required to make out a civil RICO claim. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."). Therefore, plaintiff's amended complaint fails to state a claim under civil RICO.

### C. 42 U.S.C. § 1985

Plaintiff's remaining federal-law claim is a claim that all defendants other than Simms violated § 1985(3), regarding conspiracy to deprive plaintiff of his civil rights. *See* Dkt. 6-1, at 37.

To bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). It is well-

settled that in a claim brought under § 1985(3), a plaintiff must allege that defendants acted from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]" *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Ninth Circuit has extended § 1985(3) beyond race "only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (internal quotation omitted). Thus, for example, a claim of conspiracy to retaliate, without more, does not give rise to a cognizable cause of action under § 1985(3) for conspiracy to discriminate. *Accord Saunders v. Cty. of Sacramento*, 2:10-cv-02559-GEB-KJN-PS, 2011 WL 6100295, at *9 (E.D. Cal. Dec. 6, 2011).

Here, plaintiff simply states that defendants other than Simms discriminated against him by "provid[ing] Disparate Treatment than [sic] other classes of persons" and "did hinder, obstruct, and prevent Plaintiff from Access to the courts and Redress of Grievances, in violation of Equal Privileges [sic] protections." Dkt. 6-1, at 37. He also claims that defendants other than Simms deprived him of hi property "by refusing to provide ordinary care of good faith, without Due Process of the Law, in violation of the Equal Protections of the Law." Dkt. 6-1, at 38. These allegations include no indication of whether plaintiff is a member of a protected class and whether defendants' actions were based on plaintiff's membership in such a class. As such, plaintiff fails to state a claim under § 1985.

**III. State Law Claims**

Plaintiff's remaining claims sound in state law. Because the Court dismisses without prejudice the portion of plaintiff's proposed complaint bringing federal claims, the Court further declines at this juncture to exercise supplemental jurisdiction over plaintiff's remaining, state law

claims. Therefore, plaintiff's entire, proposed complaint will be dismissed without prejudice from his IFP application.

However, as the Court grants plaintiff leave to amend his complaint, the Court notes that certain of plaintiff's state law claims are not cognizable, in the respects discussed below.

First, although plaintiff states claims of both "outrage" and "intentional infliction of emotional distress," these are the same claim under Washington State law. *See, e.g.*, *Birklid v. Boeing Co.*, 127 Wn.2d 853, 873 (1995). Moreover, an element of such a claim is that defendants' conduct was not merely tortious, criminal, intentional, or malicious—plaintiff must plead that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 868 (emphasis and internal quotation omitted). Plaintiff has not pleaded that defendants' conduct was "outrageous" and "beyond the bounds of decency" beyond alleging that the conduct was malicious, criminal, and intentional.

Second, plaintiff includes a claim under Washington's Consumer Protection Act ("CPA"), RCW 19.86.020. *See* Dkt. 6-1, at 42. The elements of such a claim are "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his . . . business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Nw. Trustee Servs., Inc.*, 183 Wn.2d 820, 834–35 (2015). Plaintiff does not allege how the Charles Schwab defendants' actions "affected the public interest"—that is, "a likelihood that other plaintiffs have been or will be injured in the same fashion." *Id.* at 835. Thus, as currently alleged, his claim under the CPA is not cognizable.

Third, plaintiff alleges a claim for malicious interference with contractual relations, which, although somewhat unclear, appears to be brought against all defendants except

defendant Simms for allegedly preventing plaintiff from protecting his separate property. *See* Dkt. 6-1, at 44. If plaintiff wishes to bring such a claim, he must allege the elements of a claim of a claim of malicious interference with contractual relations: that a defendant "without a privilege to do so, induc[ed] or otherwise purposely cause[d] a [t]hird person not to . . . perform a contract with another[.]" *See Houser v. City of Redmond*, 16 Wn. App. 743, 745 (1977).

Fourth, plaintiff brings claims for alienation of his wife's and child's affections. *See* Dkt. 6-1, at 38–40. However, Washington law has not allowed a viable cause of action for alienation of affections since 1980. *See Madden v. Foley*, 83 Wn. App. 385, 390–91 (1996).

Fifth, plaintiff brings a claim for "private nuisance" against defendants other than Simms on the basis of their intrusion into his life and private matters. *See* Dkt. 6-1, at 40–41. However, the tort of private nuisance is not applicable on these facts, as plaintiff makes no allegation of interference with his use of any real property. *See Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 17 n.7 (1976) (Nuisance involves substantial interference with "the use and enjoyment of the land.").

**IV. Conclusion and Direction to Plaintiff and Clerk**

Plaintiff's proposed amended complaint (Dkt. 6-1) fails to state a cognizable federal claim, so that it is dismissed without prejudice, meaning that plaintiff may file a second amended proposed complaint in support of his application.

Plaintiff should amend his complaint to contain a short, plain statement of his entitlement to relief. He must explain how he has shown the elements of his federal law claims, including specifying how he has established a civil RICO claim with regard to each defendant—including how each defendant acted with a common purpose. Plaintiff should include concrete factual allegations and avoid relying on conclusory statements of liability.

1      The undersigned will not rule on plaintiff's IFP application until plaintiff has submitted an adequate proposed complaint. Moreover, plaintiff must either pay the filing fee and submit an adequate proposed complaint or must be granted leave to proceed IFP if he wishes to proceed with this matter. Because there is no adequate proposed complaint in this matter, the Court declines to address any issues regarding service at this juncture.

     The Clerk shall update the docket to reflect dismissal of plaintiff's proposed complaint (Dkt. 6-1) without prejudice and shall renote plaintiff's IFP application (Dkt. 1) for **November 29, 2019**. Plaintiff shall submit a proposed second amended complaint or otherwise comply with this Order on or before **November 29, 2019.**

     Dated this 29th day of October, 2019.

J. Richard Creatura
United States Magistrate Judge